Good morning. May it please the Court. My name is LeVar Taylor. I'm appearing on behalf of the appellants Warren and Barbara Parchan. I would like to reserve two minutes for rebuttal, please. This is a tax refund case involving two distinct causes of action on appeal from a granting of a motion to dismiss under 12b1 and 12b6, a procedural point that's important. For the year 2001, the key issue is the mitigation provisions of the Internal Revenue Code. In the court below, the only question that the parties disagreed was whether or not there was a double disallowance of a deduction. Yet the district court, after ruling on the motion, held that the Parchans had, quote, slept on their rights. That quote is taken out of context from this Court's opinion in Rush Light. And I want to make clear that in Rush Light, what happened was there was a tax court decision that came down where the taxpayer lost. And at the time that tax court decision came down, the taxpayer still had time to file a claim under the regular refund claim procedures. The mitigation procedures only apply when, after the tax court case is decided or other determination is made, the taxpayer no longer has the ability to file a claim for refund under the normal claim for refund procedures. So Rush Light has no bearing on this case. That language in the Court's opinion that says that Rush Light slept on his rights has no application to this case, because in this case, there is no doubt that the tax court's decision came down after the normal period for filing a claim for refund had expired. So the only issue on the mitigation issue on the 2001 is whether or not there was a double disallowance of a deduction. Could you go through what the double disallowance was? Could you just go through where the two disallowances occurred? Yes. The first one, there was no disallowance. Well, in the end they didn't say that there was anything wrong with the 2001 return. Well, there was never a section 162 deduction claim submitted in 2001. It simply wasn't submitted. The only claim that was submitted was the section 212 deduction, which is different substantively under the tax code. How can there be a double disallowance if there was never a disallowance in the person? Well, because it should have been claimed in 2001. Okay? It was not. Instead it was claimed in 2002. It was claimed in 2001, wasn't it? I'm sorry. Half was claimed in 2001 and half was claimed in 2002. I'm talking about half of the fees that were claimed in 2002 should have been claimed in 2001. Right. Okay? There was no, they disallowed the 2002. Correct. At that point in time, that's what triggers. And that was correct. That was correct. And so at that point in time, they had never gotten a 162 deduction in 2001, hence the double disallowance. But that's not a disallowance. A disallowance is an affirmative on the part of the IRS disallowing a claim. Well, they ultimately, but the purpose of the mitigation provisions when you say double disallowance, it does not require the government to first disallow in the year where you should have claimed it. In other words, when a taxpayer says, oh, they find out I claimed it in the wrong year. Okay? And that's not enough by itself to trigger the mitigation provisions. There must be a determination. That's the key. And the determination takes place in this case, in the tax court case that's decided long after the normal statute of limitations has expired. Are you saying the tax court ruling was the disallowance? I'm saying that, yes, for the 2002, yes. For 2002, it's the ultimate disallowance, and it's the determination under the mitigation provisions. What are the two disallowances? Double is two disallowances, right? So the tax court ruling was one disallowance. What was the other disallowance? The disallowance was the fact, and this is sufficient under the case law, that the 162 deduction was never claimed in the year in which it was paid. So it was a failure to claim. The failure to claim a deduction is a disallowance in your view? Yes. That's what the case law says. Which case says that? That's basically all. Tell me the case that says it most clearly. The case that does it most clearly would be Beaudry-Mortar. That's 98 F. 3rd, 1167. So you're saying that Beaudry-Mortar says that for the purposes of the mitigation provision, a failure to seek a failure to seek relief counts as a disallowance. Failure to seek a deduction counts as a disallowance. Correct. So tell me the specific page in Beaudry-Mortar and the language that you're relying on to support that argument. I don't have that at this moment, Your Honor. But the point is, you cannot have – if you don't get the deduction in year one, you've claimed it in year two. In this case, we're dealing with half of the attorneys' fees that were claimed in year two, 2002. It simply has not been allowed because you've never claimed it. That's a double disallowance. It's not a disallowed. When you filed the amended return for 2001, it was untimely. So it was rejected. So it was rejected. They never rejected your 2001 deduction. You just didn't get any benefit from it, as it turned out. No. In year one, it was rejected. The 162 – well, let me say, the 162 deduction was disallowed as untimely in year one under the normal. It was rejected. It was rejected as untimely. The merits of it was never – the merits were never decided because it was untimely. So it wasn't allowed or disallowed. It was just rejected as untimely. But, again, the failure to – the failure to – for the government to allow it means there has been a double disallowance. It means you've never got the benefit of it. Well, that's the first one. I don't – I'm confused by your argument. The 2001, to the extent that they claimed half of the – half of the legal fees under Schedule A, that wasn't disallowed. There was no disallowance. That's a 212 deduction. That was not a 162 deduction. Forget about what – you confuse me when you get into these different statutes. That's – I'm just talking about what actually happened here. Whatever number you want to attach to it, they did not disallow the claim for counsel fees in 2001. Well, under Section 212. And those – and our position is Section 212 deductions are distinct from Section 162 deductions. So what was that? Was that a – that was a what? That was a rejection? A double – was it denial? Of Section 212? Don't give me the number. Was it a denial of the deduction for your business expense under Schedule A? The Schedule A claim deduction under 212 was never denied. Okay. The Section 162 deduction was never claimed until after the normal statute of limitations had expired. So the second time around, so that's the first denial then is the untimely application, is the untimely tax return. Of 162. Of 162. So that's the first time. Same expense. Same expense, different section of the tax code. That's correct. And B.C. Cook, the tax court case we cited, stands for the proposition that you can have a single payment be two different things under the mitigation provisions. Because in B.C. Cook, you had an embezzlement. And the taxpayer claimed it was a theft loss. And they litigated that, and they won. And then the government came back and said, oh, you included those – the amount stolen in your cost of goods sold earlier on. And the tax court said, and it was affirmed on appeal and summary, that that's not the same thing. That, in fact, costs of goods sold are not the same thing as a theft loss deduction. And that's the same – that's really the same thing here. A section 162 deduction is what we refer to in tax language as above the line. It's used to compute adjusted gross income. It can create a net operating loss. It's a completely different type of deduction. But they're both – in both instances, you're trying to reduce income. What is gross income, taxable income, adjusted gross income? They both are adjustments to income. They're – one is a – well, income – adjusted gross income is different than adjustments to taxable income. But they're both deductions from income in one form or another, above the line or below the line. They're both deductions from income. From – one is, yes. One's from adjusted gross income. One's from taxable income. And they – and those are different things because they have different consequences to taxpayers. Well, but whether they're allowed or disallowed, it doesn't matter if they're above the line or below the line. If it's the same claimed deduction, it's either allowed or disallowed. It's not allowed as a 162 or a 212. It's allowed or disallowed. Well, again, B.C. Cook stands for the proposition you can have the same payment treated as different items under the mitigation provisions. And these are different items. Section 162. So let's – you've said that. So the first denial of the 162 is when they knock out your amended tax return on the grounds that it's untimely. Yes. Not on the merits. Correct. And what's the double? So I'm looking for number two. The double. What was the second? What makes – Well, they denied the mitigation claim. In other words, they came in and we said we should have claimed it in year one. So when they denied – but my understanding is that the mitigation claim deals with not so much a disallowance of a particular deduction as a – but as an argument around the statute of limitations. That is correct. So I don't see how there's a double disallowance of your claim. First – your first is denied on the ground of the statute of limitations. Then you file the exact same thing again and it's denied because they claim that you're not – you don't have a new theory here. You're just – the second time around they're saying that you're arguing a theory about mitigation, not anything that goes to the merits of the deduction. Well, the whole purpose of the mitigation provisions is to allow a taxpayer to come back and claim a deduction where they left it off of the return the first time around, okay? And in this case, the 162 deduction was left off of the return, was never claimed. The section 212 deduction – You could keep filing amended returns and eventually there will be a double denial. Well, this is – again, there does not need to be a formal denial in year 1 when you have erroneously claimed it in year 2. You were supposed to claim it in year 1. You did not. And then there was a disallowance in year 2. And so you go back and when that disallowance takes place, when it's too late to come back and file a claim under the normal rules in year 1, at that point in time, that triggers the one-year period to come back and say, oh, we should have claimed this. We – Your argument would be more persuasive if no deduction had been claimed at all for the attorney's fees originally. Then that would be, in my view, an omission. But you did file. You just filed under the wrong portion of the tax code. Well, again, when you say the wrong portion, it's a different code section and it's a different item. And that's the issue in this case. Is that a different item for the mitigation purposes? Okay. I think we've got it. Let's hear from the government and then we'll give you a chance to respond. Okay. There is the second issue, which I've not had a chance to respond to discuss on the 2002. Well, why don't we give you one minute on that? But you're already three minutes over time. I confess we've been taking you over time, but discuss that issue so it doesn't have to come up merely in rebuttal so the government can hear what you say. But do it in a minute. Very simple. There was an assessment made while the tax court case was pending. That was illegal. That's clear under Bunyan. Every court case that's true in the Ninth Circuit, Seventh Circuit, Second Circuit, it's illegal. And so the only question – And there's no doubt that the res judicata language in Bunyan only applies to this court's ruling, not the tax court's ruling. So the tax court is irrelevant. All courts that have looked at this issue say you can challenge the assessment made during the tax court case while the restrictions under 6213 apply. You can challenge that later. The only issue is – I don't understand. This is another argument of yours that I don't understand. You went into it with stipulations settling the tax court proceeding. And as far as I could see, whatever the – whether the IRS should have made the assessment when it made the assessment, it wasn't in the wrong amount. And the amount of the assessment is not in dispute. So what damages are you claiming? Well, the – I mean, what relief follows from this, assuming you're not precluded by virtue of having entered into a stipulation as to the amount and terminating the tax court decision? Well, two parts. One, there's an $800, $1,000 failure to pay penalty that would not have been charged had – That's what this is about. No, it's not. That's – that's – you asked me for what's an economic difference. There's a small economic difference. Is there counsel fees here? I'm sorry? If you win? Is there counsel fees if you win? No. The assessment, yes. This is an illegal assessment. This Court has never asked when there's an illegal assessment, oh, is there any harm. The Court has said it's void. So it's void. So what? But you entered into a stipulation, and you paid it, and there's no doubt about the accuracy of the assessment, the amount of the assessment. So why is this still here? Because a void assessment, when it's – But what do you get if you win on this claim other than the $1,000? We get the full amount back, the full roughly $100,000 back. That's what happened. You stipulated that you owed. Yes. And then you get to keep it? Yes. How can that be? Because it was assessed in violation of the restrictions on assessment. And this Court has said very clearly in Bunyan, okay, the only difference between Bunyan and this case was that it had not been paid. Okay? There was a claim in the Bankruptcy Court. And so what would have happened in Bunyan if the – if this Court had said, oh, we – if there was never a decision by the Ninth Circuit. It would have been paid pursuant to a stipulation. I don't understand. I don't understand your whole argument. Could I ask you how much money is involved in this case altogether? About $150,000. And I can't imagine how much money has been spent on counsel fees in filing all of these amended returns and lawsuits. I mean, it just doesn't make any sense. This Court has said – It's not relevant to the legal issues. I understand. But my point is this. In Bunyan, if the assessment had been void, okay, if it had been made in – made in violation of the restrictions on assessment, the IRS would not have been able to collect the tax that the Court determined was owed. The only difference is we're in a refund mode. And in our Rule 28J letter, we pointed out that under 6512, Congress has said, you can get a refund of amounts paid in – where there's an illegal assessment such as was the case here. You can't get a windfall of money that you can't get – if you had overpaid, then I could see your argument. But you can't get a windfall just because there was an illegal assessment, can you? Yes. And there's a 1997 case not cited in our briefs. It's a Supreme Court case called Brockamp. And what happened in Brockamp was this. You know, if it wasn't cited in your briefs, why don't we hear from the government and then we'll give you a chance to respond. Thank you. May it please the Court. I'm Regina Moriarty and I represent the United States. Let's go right to the no double disallowance issue. I'm trying to think what to say. The – when taxpayers filed their returns for 2001 and 2002, his accountant treated them differently, which is curious to me, because on one return he claimed them as a Schedule A and on one return he claimed them as a Schedule E. If you could speak up, please. And when it came to – when it was discovered that none of those amounts were paid in 2002, it was, okay, well, now we have to do something. We have to claim those on 2001 for the year in which they were actually incurred. Which is appropriate. Which is appropriate. And – Is there any reason why we figure out why they were allocated in the way they were, which turns out not to have been the fact? You would have to ask the accountant that. There's really nothing in the record. And, you know, it would depend on the basis of that original lawsuit and who it was against and – Short answer is you don't know. I have no idea. And it's not relevant to what's going on here. So the taxpayer timely filed an amended claim. And they took the legal fees that they had claimed for 2002 and applied them to 2001. IRS accepted that. So far, so good. So far, so good. Now they're complaining because their accountant made the mistake and maybe they could have reaped more of a tax benefit. But they could not have in 2001 filed an amended claim and say, well, geez, I'm going to put the remainder of those attorneys' fees as both a 162 deduction and a 212 deduction. You couldn't – you can't claim the exact same legal expenses two ways. They chose one. They may have chosen incorrectly. I don't know, because that would – Normally, could they have switched from 162 to 212 in yet another amended return? Yes. And then that would have been – then they would have audited that and determined which was proper. But you can't after the fact and after the first amended return had been accepted and the expenses allowed, after the statute's run, you can't come back and file another amended claim. So what about opposing counsel's argument that at that point it became a disallowance, such as so as to trigger the double disallowance? I have a really hard time following that because the IRS allowed the amended return where those legal fees, or that figure, whatever it was, I have no idea, was claimed. And so by their virtue of them putting that dollar amount on the amended return and the IRS accepting it, it was a disallow. Well, his argument is there's a difference. I'm sorry. His argument is there's a difference between the 162 above the line and 212 below the line deductions. And there is. But you can't use the same legal expenses on both of those. You have to choose one depending on which facts it fits under. So it either fits under one or the other. It can't be both. It can't be both at the same time. Yeah. And as you said, he actually tried to do it, because in 2001 they did it on Schedule A and on 2002, the other half they did on Schedule E. So their accountant knew that there was a difference. And to me, if it's the same lawsuit and the same legal expenses, you choose one or the other. I don't know why an accountant would split it like that. It doesn't make any sense. Opposing counsel referenced the Beaudry-Motor case as supporting his position here. I have to admit, I briefed that case many years ago. Say it again. I briefed it many years ago here before this Court. And like you, I'm having a hard time remembering exactly what it was. It involved investment tax credits and net operating losses and very confusing things like that. But the opinion is actually very favorable to the government here, because in that case it involved taking a deduction for an investment tax credit on property and then selling that property before it would have been entitled to the investment tax credits. And when the taxpayer sold that property, could have at that time filed an amended claim that still would have been timely. And in this case, it seems to me, too, that the accountants knew that there was a difference between the Schedule A and the Schedule E deductions. And when they filed the timely return, they could have easily chosen what they now view as the correct way to categorize that deduction. And so this Court said Beaudry could have filed a timely second amended refund claim for the year when it filed for 86, when it had filed the amended returns for 83 through 85. Now, Beaudry knew or should have known at the time the tax consequences. Just like here, the accountant, the lawyers knew or should have known the difference between claiming a 162 deduction and a Section 212 deduction. What's your response to opposing counsel's reliance on Cook for the proposition that these are two different items and therefore should be treated differently for the purpose of a double disallowance determination? Well, I think as I just explained, they are two separate items, but you can't use the same dollar amount to claim both. You have to choose one or the other. And once you've made that choice and once it's been allowed, you can't come back after the statute has run and try to change that. What's your response to the illegal assessment issue? There's no question here that the assessment was premature. The question is whether the taxpayer is entitled to a refund after you file the suit in the tax court, after you stipulate to the amount of taxes you owe, and after you agree that you haven't paid more than you owe. And so when he's in the tax court and the premature assessment became known and the IRS said pay up and the taxpayers wrote a check, at that point in time, the tax court, at that point, I think the statutory provision that opposing counsel sent in in his 28J letter kind of shows you that the taxpayer could have asked the tax court to stop all of that at that point. That normally when you go to the tax court, the idea is that you go to tax court and get the issues resolved before you have to pay, unlike a refund suit where normally you have to totally pay everything before you can bring a suit in district court. And so when you look at, all I looked at was the legislative history briefly because I didn't have that much time after the letter came in after I got back to the office after the holidays. But in 1998, it looks like that traditionally, if you go to tax court, the court cannot issue a refund until after all of the appeal is final and a final decision comes out. And so when you read the legislative history, it looks to say, well, if there's a premature assessment and that amount is collected, the taxpayer can get that money back at that point in time because At the point in time when the tax court is considering the matter? Right. It's giving them the authority to do that because it shouldn't have been assessed. Or if there's more than one issue going on, the legislative histories indicate that if you resolve one issue and there's a refund due for that, the court can go ahead and issue, and order that refund before waiting for maybe to go through the court of appeals and have the decision become final at that point. But in a premature assessment, it's different than an assessment that's going to be an assessment that comes late, which would automatically be deemed an overpayment. That doesn't happen with a premature assessment here. And I think that this Court's opinion in Van Antwerp is right on point, saying that you can't get back more than you owe. I didn't read that right. That an overpayment is any amount that's paid in excess of what is due. And so here there's no question that he hasn't paid more than he owed. And so he can't get a refund. So opposing counsel appeared to be arguing that he is entitled in the event of an illegal assessment to get more than he's owed, and he was going to cite us to a Supreme Court case in support of that proposition. Are you aware of any authority that supports that argument? No, I am not. Like I said, I think the Van Antwerp case, which was then Martinez carved out a very small exception to that. But then I think Powelson, which the district court discussed, reaffirmed this Court's opinion in Van Antwerp. Off the top of my head, I'm going to say Brockamp is an equitable recoupment case, which would be totally different. But I'm just digging back. I haven't read that case in years. Are there any other questions? Okay. Thank you. Now, we took you well over time. We'll give you one minute in rebuttal. And if you want to give us the citation to the Brockamp case that you didn't cite in your brief, we're happy to look at that case. Brockamp is 117 S. Court 849. 117 S. Court 849. Okay. Got it. First, I'd like to say that with respect to the windfall, the Seventh Circuit in Yellow Cab gave the taxpayer, quote, a windfall. Yellow Cab is directly contrary to the Van Antwerp case. Okay? Well, you're not in the Seventh Circuit, unfortunately. No. But Section 60, the changes to 6512 I think legislatively have overruled Van Antwerp because it says you can now file a refund suit in district court after the tax court case is over. It doesn't limit you to going to tax court. It just doesn't. It's an exception. Two, in the Second Circuit, in the Johnson case, taxpayer got a windfall. Okay? In the Brockamp case, the government got a windfall. Or the government got a windfall because the taxpayer didn't follow the rules. There was a refund claim. It was filed late. The taxpayer was under a disability. It went to the Supreme Court, and the court said, too bad. You did not follow the procedures. Even though everybody agrees that the taxpayers owed the money, the government doesn't have to pay it back. Our case, our tax system is a voluntary compliance system. The government, in addition to taxpayers, needs to follow the rules here. The government did not follow the rules. It's a shame on them, but I don't see why you get it. You're entitled to prevail. Well, you stipulated that the amount was correct. Well, again. You settled a tax court suit. It can't, what you're saying just can't be right. Well, the case law says otherwise, Your Honor. Finally, this case is up on an appeal from a dismissal. The court dismissed this without leave to amend. We have an absolute right to amend once. We did not get the government's files in discovery. Did you ask for leave to amend? What? Did you ask for leave to amend? The court dismissed it without prejudice before we could even do it. Without prejudice? With prejudice. I know. This was with prejudice. We asked for the government's files. I know, but did you? I asked you if you asked for a leave to amend. The court just granted the government's motions. I think the answer is no. The answer is no, because the court dismissed without, dismissed with prejudice on a motion to dismiss. I understand that, but then you could say, you know, file a motion for rehearing and say, please give us leave to amend. You shouldn't have dismissed it. And here's the complaint. I would file if you gave me leave to amend. Well, we did not do that. The court did not. We asked for the government's files in my case. The government, nobody from the government anywhere along the line that says, oh, these files are not relevant to the case. They can't possibly help you. The court below didn't make that finding. The government didn't make, didn't represent that. And the government didn't say that in its brief. And any dismissal should be without prejudice. Before you go, could you give me a pin site in the Brockamp case that supports your argument? You gave me the citation to the case. What's the pin site? There's no pin site because the context is simply that the government got to keep money it wasn't entitled to. All right. Because the taxpayer failed to follow the rules. All right. That happens sometimes on our system, and that should be the case here. It's not an assessment case, a legal assessment case. It's a refund case where the refund claim was filed late because they didn't follow the rules.  Thank you very much. Thank you. The case of Parchin v. United States is now submitted for decision.
judges: Korman, Fletcher, Rawlinson